THE BANK OF BRITISH NORTH AMERICA, Respondent, *v.* RICHARD DELAFIELD, Appellant.

Where a loan is made by a firm to one of its members, in case no time of payment is set, the law implies a promise on the part of the borrower to pay upon demand without going into an accounting.

*It seems* an action is maintainable by the firm against the borrowing member to recover the sum loaned.

Where in an action to recover a loan from a copartnership to one of its members, brought by an assignee thereof, upon the trial an examination into the firm account was so far had as to show that the defendant was indebted to the firm in a sum largely in excess of the money sued, *held,* that plaintiff was entitled to maintain the action.

Defendant denied that the transaction was a loan, and the testimony upon this issue was conflicting. Upon the trial, the plaintiff, under objection

and exception, was permitted to introduce a letter from one of the members of the firm to defendant, in which the writer assumed to rehearse. the circumstances, and stated that defendant had accepted the money as a loan.   It did not appear that defendant answered this letter.   *Held*, that it was not competent evidence, as it was a mere declaration of the writer, assuming in his own behalf to characterize and determine the nature of the transaction; that the failure to answer was not an admission of the facts stated; and that the error required a reversal.

*T. G. C. Co.* v. *Smith* (110 N. Y. 83), distinguished.

The letter called attention to the fact that a draft had been drawn upon defendant by the firm for the sum in question.   Defendant's answer admitted that he had notice of the assignment of the firm claim, and the draft itself had been presented and payment refused.   *Held*, that the letter was not admissible as a notice of the assignment, as there was. no question of notice.

(Argued March 20, 1891; decided June 2, 1891.)

APPEAL from judgment of the General Term of the Supreme. Court in the first judicial department, entered upon an order made December 29, 1890, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial without a jury.

This action was brought by plaintiff, as assignee of the firm of William T. Coleman & Co., of San Francisco, to recover the sum of $25,000 and interest alleged to have been loaned and advanced by said firm to defendant who was, at the time, one of its members.

Plaintiff's evidence was to the effect that on December 31, 1887, defendant drew $25,000 of firm moneys on the firm check signed by him and had it credited in his own private bank account.   A few days before he had telegraphed from New York, where he lived, to the firm at San Francisco, asking if he might draw that sum and his request had been refused, but the firm offered to loan him $25,000 if he could negotiate it. Defendant made no answer, but a few days thereafter drew the money.   Defendant denied that the transaction was a loan, but claimed that he drew said money pursuant to the consent of the other members of the firm.

Other facts are stated in the opinion.

*E. Countryman* for appellant. The defendant Delafield did not receive the sum of $25,000 drawn by him December 31, 1887, from the firm of William T. Coleman & Co., as a loan. (*Payne* v. *Freer*, 91 N. Y. 43, 48–56 ; *Silver* v. *Barnes*, 6 Bing. [N. C.] 180, 185 ; *Gilpen* v. *Endbury*, 5 Barn. & Ald. 954 ; *Bloss* v. *Chittenden*, 2 T. & C. 11, 14 ; *Westerlo* v. *Evertson*, 1 Wend. 532 ; *Halsted* v. *Schmetzel*, 17 Johns. 80 ; *Casey* v. *Brush*, 2 Caines, 293 ; *Pattison* v. *Blanchard*, 6 Barb. 537 ; *Torrey* v. *Twombley*, 57 How. Pr. 149 ; *Atwater* v. *Fowler*, 1 Hall, 180 ; *Muller* v. *Cox*, 15 N. Y. S. R. 393 ; *Simmons* v. *Murray*, 1 id. 85, 86 ; *Buell* v. *Cole*, 54 Barb. 353 ; *Belanger* v. *Dana*, 52 Hun, 40 ; *Arnold* v. *Arnold*, 90 N. Y. 581 ; Story on Part. §§ 219–221 ; 1 Collyer on Part. ·§§ 196, 269 ; 2 Lindley on Part. 1024–1032 ; *Stettheimer* v. *Tone*, 114 N. Y. 501 ; *Ferguson* v. *Baker*, 116 id. 257 ; *Crater* v. *Binniger*, 45 id. 545 ; *Howard* v. *France*, 43 id. 593 ; *Goddard* v. *Hodges*, 1 Cr. & Mees. 33 ; *De Tastet* v. *Shaw*, 1 Barn. & Ald. 664, 669 ; *Richardson Case*, 4 Myl. & Cr. 171, 172 ; *Niven* v. *Spickerman*, 12 Johns. 401, 402 ; *Davis* v. *Merrill*, 51 Mich. 480 ; *Neale* v. *Turton*, 6 Bing. 149, 151 ; *Teague* v. *Hubbard*, 8 Barn. & Cr. 345 ; *White* v. *Harlow*, 5 Gray, 463, 467 ; *Hill* v. *McPherson*, 15 Mo. 204 ; *Burley* v. *Harris*, 8 N. H. 235 ; *McQueen Case*, 31 Ala. 230.) If the transaction could be regarded as a loan or advance of money to Delafield from the firm the same result would follow. It is not claimed that the advance was made under any special contract designating the time or manner of payment. It must, therefore, be governed by the general rule of law regulating such transactions between the members of a partnership. (Story on Part. § 348 ; *Payne* v. *Freer*, 91 N. Y. 43, 50, 56 ; *Richardson Case*, 4 Myl. & Cr. 165 ; *Bouton Case*, 40 How. Pr. 217, 219.) The draft or bill of exchange in suit was not shown to have been drawn by the old firm, and the presumption is that it was drawn by the new or successor firm, which was not the owner of the claim, if any existed, against Delafield. The withdrawal of Delafield on the 31st day of December, 1887, by common consent, effected a dissolution of

the old firm, and it remained in existence merely for the pur
pose of a final settlement of its affairs.  (Story on Part. § 322;
*Menagh* v. *Whitwell*, 52 N. Y. 147, 166, 167; *Horton's
Appeal*, 13 Penn. 66; *Kennedy* v. *Porter*, 109 N. Y. 527,
550, 551; *Farr* v. *Morrill*, 53 Hun, 32, 35; *Hooley* v. *Gieve*,
9 Daly, 104; 82 N. Y. 625; *King* v. *Leighton*, 100 id. 386,
391; *Prudhomine* v. *Henry*, 5 La. Ann. 700; *Davis* v.
*Desaugue*, 5 Whart. 529; *Haynes* v. *Brooks*, 8 Civ. Pro. Rep.
106.)   The trial court erroneously charged Delafield with all
the losses sustained by the new firm in its new enterprises
after his withdrawal from the old firm, precisely as if no disso-
lution had taken place.  (*White* v. *White*, 23 J. & S. 417;
Story on Part. § 160; *Lansing* v. *Gaine*, 2 Johns. 301; *Buell*
v. *Cole*, 54 Barb. 354, 363; *Carman* v. *Kelly*, 5 Hun, 283;
*Jackson* v. *Johnson*, 11 id. 509.)   The entries from the firm
books kept at San Francisco were incompetent evidence against
the defendant.  (*Taylor* v. *Herring*, 10 Bosw. 447; *Heart* v.
*Corning*, 3 Paige, 566; *Cheever* v. *Lamar*, 19 Hun, 131, 136;
*Fairchild Case*, 64 N. Y. 472, 480.)   It was error, in any
event, to exclude the evidence of the statements and letters
from the firm to Delafield, made from time to time during the
continuance of the old partnership.  (*Heart* v. *Corning*, 3
Paige, 566; *Taylor* v. *Herring*, 10 Bosw. 447; *Cheever* v.
*Lamar*, 19 Hun, 132, 133.)

*Hugh L. Cole* for respondent.  The finding of the trial
justice that this $25,000 was in fact loaned to the defendant
Delafield and was independent of the partnership accounts,
being supported by the evidence and having been expressly
concurred in by the General Term, will not be disturbed by
this court.  (*Westerlo* v. *De Witt*, 36 N. Y. 340; *Beaver* v.
*Beaver*, 117 id. 421.)   W. T. Coleman & Co. could have recov-
ered this loan of $25,000 from Richard Delafield by action at
law.  (*Ferguson* v. *Baker*, 116 N. Y. 261; *Stettheimer* v.
*Tone*, 114 id. 505; *Howard* v. *France*, 43 id. 593; *Crater* v.
*Bininger*, 45 id. 545; *Muller* v. *Cox*, 15 N. Y. S. R. 393;
*Payne* v. *Thatcher*, 25 Wend. 450; *Bradford* v. *Kimberley*,

3 Johns. Ch. 431.) The order in question was not a bill of exchange, but it was an order or assignment of a fund. (*M.*, *etc.*, *Bank* v. *Jauncey*, 3 Sandf. 257; *Winter* v. *Drury*, Id. 263; 5 N. Y. 525; *Cowperthwaite* v. *Sheffield*, 3 id. 243.) This order, after presentation, operated as an assignment of the fund loaned to the defendant by W. T. Coleman & Co. No acceptance by the drawee was necessary to complete the assignment. (*Shuttleworth* v. *Bruce*, 7 Robt. 160; *Lowre* v. *Stewart*, 25 N. Y. 239; *Murron* v. *Taylor*, 1 Hill, 584; *Atty.-Gen.* v. *C. Ins. Co.*, 71 N. Y. 328; *People* v. *Comptroller*, 77 id. 45; *Brill* v. *Tuttle*, 81 id. 454; *Lauer* v. *Dunn*, 115 id. 405.) Even if the defendant did not intend to accept the money as a loan, but instead thereof, in violation of his partnership obligations, wrongfully appropriated it to his own use, nevertheless Coleman & Co. were free to waive the wrong and treat the transaction as a loan. (*Osborn* v. *Bell*, 5 Den. 374; *Cummings* v. *Vorce*, 3 Hill, 281; *Goldrick* v. *Willits*, 52 N. Y. 620; *Comstock* v. *Hier*, 73 id. 275.) The defendant did receive the sum of $25,000 from the firm of William T. Coleman & Co. as a loan. (Lindley on Part. § 267; Collyer on Part. § 197.) The rule as to a loan is quite different from the rule as to an advance to a partner, *i. e.*, in effect an overdraft by a partner. (Story on Part. § 258; 2 Pars. on Cont. § 661; *Payne* v. *Freer*, 91 N. Y. 43; *Richardson* v. *Bank of England*, 4 M. & C. 165; *Bouton* v. *Bouton*, 40 How. Pr. 217.) The withdrawal of Delafield did not affect the dissolution of the old firm. (Lindley on Part. § 574; *Menagh* v. *Whitwell*, 52 N. Y. 166; *Horton's Appeal*, 13 Penn. St. 67; *Kennedy* v. *Porter*, 109 N. Y. 526; *Farr* v. *Morrill*, 53 Hun, 32; *Hooley* v. *Grieve*, 9 Daly, 104.)

PECKHAM, J. Upon the question whether the money which the plaintiff seeks to recover was a loan to the defendant from the firm of which he was a member, or was money drawn by him under a claim of right from the firm treasury in New York, we think there was evidence to warrant a finding that it was a loan and was so received by the defendant.

The learned trial judge found that it was a loan. No time was specified for its repayment, and it became due upon demand. The defendant claims that no action at law by a portion of a firm can be maintained in case of a breach of contract and of a wrongful act by another member against such other member, unless upon an express promise to pay and after a final accounting and a balance struck. This may be true; but the case is one where the member sued has been guilty of a wrongful act, and a breach of his duty, and has, for instance, converted funds to his personal use by payment of his debts, which belonged to the firm. These are the general characteristics of the cases cited by defendant's counsel. Here is a case, however, where a loan of money belonging to the firm has been made to one member of it, and the law, upon an ordinary simple loan, even to a partner, implies a promise to pay it at the time stated, or upon demand, without going into an accounting. The cases where an express promise to pay has been required were those where from the facts no implied promise to repay would be raised, excepting upon an accounting and a balance struck. Thus Judge ALLEN, in *Crater* v. *Bininger* (45 N. Y. 545 at 548), says that an action will not lie by one member of a partnership against another upon an implied promise, and if the plaintiff had paid the demands against the firm he could not have maintained an action against his associates upon the implied promise to repay him. In such case the promise implied is to repay the amount that may be found due after an accounting. But one partner can maintain an action against his copartner upon an express promise, although connected with partnership business. He refers to *Gridley* v. *Dole* (4 N. Y. 486), which was a case where one of two partners after a dissolution advanced money to the other upon his promissory note, to pay partnership debts, the assets of the late firm being in the hands of the member receiving the money. It was held he could recover upon this express obligation to repay, but if no such obligation had been taken, it would have been the case of one partner advancing money to pay, or paying demands against the firm, and in such case he

could not recover back the whole or any part of the money in an action against his copartners, because the action would be upon an implied promise, and that implied promise was only that the other partners would pay what was due him after an accounting had been taken to ascertain the state of the partnership matters, and the balance, if any, that might be due him. Where, however the facts proved raise an implied promise to repay upon demand the very sum which has been loaned, I think an action can be maintained thereon just as well as upon an express promise to do the very thing which the law implies without such express promise. But be that as it may, we have here the further facts that the indebtedness from defendant to the firm was assigned by it to the plaintiff, and upon the trial an examination into the firm accounts was had so far as to show the defendant indebted to the firm in a sum largely in excess of the money sued for by the plaintiff. That an assignee could recover upon the indebtedness arising from the loan, after proof of the state of the partnership accounts, and that defendant was indebted to it in a greater sum than the amount assigned, can admit of no doubt. In our union of legal and equitable remedies in the same tribunal, and after what may be termed an examination in the nature of an accounting has been had, it is a matter of no importance that it was carried on in what would be termed an action at law. There is no claim now made that there has been but a partial accounting or that in consequence of such partial accounting the defendant has been found indebted to the firm in a greater sum than would have appeared if a full and complete accounting had been had, and greater than will appear when a full and complete accounting comes to be had between the members of the firm in an action wherein they are all parties and where the judgment will bind them all. We think the plaintiff showed enough to maintain its action in this respect.

These views would lead to an affirmance of the judgment were it not for the erroneous admission of one piece of evidence which we see no available answer to. There was no dispute that the defendant, on the 31st of December, 1887,

drew $25,000 of firm moneys and had it credited to him in his own private bank account. Up to that event he had drawn $800 monthly, which was all that by the partnership articles he was entitled to draw. A few days before he, living in New York, had telegraphed the other members of his firm in San Francisco asking if he might draw $25,000 and had been refused that privilege, but the firm, through its senior member, had offered to loan defendant that amount, provided defendant could negotiate it. The defendant made no answer, but in a few days thereafter drew the money. From the partnership articles forbidding any such draft and from the request of defendant asking if he might draw, and the refusal of the firm to permit it as a mere draft, but offering to loan him that amount, and the subsequent action of defendant in drawing the sum and from all the circumstances of the case, the court was asked to draw the inference that defendant when he drew the money drew it pursuant to the consent of the firm as a loan and not in opposition thereto as well as in violation, as claimed, of the partnership articles. The question was one of intent, a question of fact, to be decided after a consideration of all the evidence in the case. The defendant was a witness and denied fully and unequivocally the drawing of the money as a loan pursuant to the consent of the other members of the firm, and he swore that he drew it as matter of right, upon the dissolution of the firm, which event occurred on that day, and he claimed that such drawing was not under the circumstances of an immediate dissolution of the firm in violation of the partnership articles limiting his drafts to $800 per month, which limit he had then already reached. Here was evidence from which different inferences might be drawn by the trial judge. Delafield being a party interested the court was not bound to believe him when he swore to what was his own intent accompanying the act of drawing, and that act was not in and of itself of so unequivocal a nature as to be conclusive evidence of the defendant's intent. In this state of the case it is seen that any evidence erroneously admitted and which may have had an effect upon the mind of the learned trial

judge cannot be overlooked. The plaintiff, under the objection and exception of the defendant specifically pointing out the proper grounds, was permitted to put in evidence a letter written by one of the members of the late firm in San Francisco to defendant under date of April 27, 1888, in which the writer assumes to rehearse the circumstances of the drawing of the check by defendant in the previous December and the refusal of the firm to permit the draft, excepting as a loan in aid of defendant, and then the letter continues : " You acceded to the terms of Mr. Coleman's dispatch of December twelfth and accepted this money as a loan. Now that we require the money and as you have had ample opportunity to turn yourself and realize upon your securities, we trust that you will appreciate thoroughly and understand our position in valuing upon you as per our cashier's letter above mentioned."

It does not appear that the defendant ever answered the letter. We can see no ground upon which the letter is admissible. It is not in the nature of a declaration which the defendant admits by not answering, nor is it on the same plane as an oral declaration to the same effect, made in the presence of the party to be charged and who may be regarded as admitting its truth by failing to deny it. This letter is a mere declaration of the writer assuming in his own behalf to characterize and determine the nature of a past transaction, and it does not demand an answer and is not admissible in evidence against the defendant. (*Learned* v. *Tillotson,* 97 N. Y. 1 ; *Talcott* v. *Harris,* 93 id. 567, 571.)

The letter was not admissible for any purpose of proving the intention that the draft drawn on defendant in favor of plaintiff should operate as an assignment to plaintiff of the claim of the firm against the defendant. The letter will be read in vain for any such information. It was clearly not written for any such purpose.

The draft itself showed that it did so operate. It was an order upon the particular fund and for the whole of it.

The case is entirely different from that of *Throop, etc., Co.* v. *Smith* (110 N. Y. 83), where the draft was an ordinary one

drawn on no particular fund, and the letters passing between the parties were put in evidence to show that there had been an assignment of the debt to one of them and an acceptance thereof by him. They were parts of the *res gestæ* and were the very papers upon which a contract of assignment and an acceptance thereof were shown.

Nor was this letter admissible for the purpose of proving notice of the assignment to the defendant. The answer admits notice thereof on or about May fourth. Notice probably would only be important for the purpose of guarding against any dealing by the defendant with the original owners after the assignment and in ignorance thereof. In this case it was not material, and if it were an admission thereof stood upon the record. In addition the draft itself was presented for payment and payment refused. There was no question of notice in the case.

The evidence of the taking of this money by defendant as a loan from the firm was somewhat slight. It was a question of fact to be decided upon evidence admitting different inferences therefrom, and the question is so close we cannot say the defendant suffered no harm from the erroneous admission of the letter.

The judgment should be reversed and a new trial granted, costs to abide event.

All concur.

Judgment reversed.